NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN PLITSAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 07-5439 (JLL) |
| ) | |
| FEDERAL EXPRESS, INC., ) | OPINION |
| ) | |
| Defendant. ) | |

For the Plaintiff: Stephen Klausner, Esq.

For the Defendant: Evan J. Shenkman (*Ogletree, Deakins, Nash, Smoak & Stewart, P.C.*)

**LINARES, District Judge.**

This matter comes before the Court on the motion for summary judgment [CM/ECF #31] filed by Defendant Federal Express, Inc. ("Federal Express" or "Defendant") on February 22, 2010. No oral argument was heard. Fed. R. Civ. P. 78. For the reasons set forth in this Opinion, Defendant's motion is granted in part and denied in part.

BACKGROUND

Plaintiff John Plitsas[1] ("Plitsas" or "Plaintiff") is a Pennsylvania resident of Greek ancestry, born and raised in the state of New Jersey. (Def. R. 56.1 Statement ¶ 1.) He applied for a position at Federal Express as a mechanic on May 30, 2002. (Id. ¶ 2.) Federal Express then hired Plitsas, who began work on June 24, 2002. (Id. ¶ 3.) On June 24, 2002, Plitsas received a

---

[1]The parties' briefing refers to the Plaintiff's first name as "John," whereas the docket gives his name as "James." This Court shall use the name given in the briefing.

copy of Federal Express's employee handbook, which contained a description of Federal Express's EEO complaint process. (Id. ¶ 4.) Plitsas received and occasionally read successive versions of this handbook during his employment. (Id.)

During his employment at Federal Express, Plitsas had two managers: Michael Hopkins ("Hopkins"), and, after January 2005, Henry Krawczyk ("Krawczyk"). (Id. ¶ 6.) The manager above Hopkins and Krawczyk at all relevant times was Jimmy Mathis ("Mathis"). (Id.) One of Plitsas's coworkers was Neil Savare ("Savare"). (Id. ¶ 8.)

Within a few days of starting work at Federal Express, Savare asked Plitsas if he was of Greek extraction. (Id. ¶ 9.) Plitsas equivocated, and Savare thereafter began making remarks about Greeks such as "Greeks are homos" and that employees should refrain from entering the locker room with Plitsas. (Id.) A month later, Savare emailed Plitsas to inquire about Plitsas's experiences in "Greek steam room[s]." (Id. ¶ 10.)

After the steam room comments, screen savers were placed on two common area computers at Federal Express displaying the Greek flag. (Id. ¶ 11.) Savare denied involvement. (Id.) Plitsas later encountered Savare and two other coworkers playing audio clips from a movie on a Federal Express computer; the audio clip discussed a Greek man killing his father in order to sleep with his mother. (Id. ¶ 12.) Savare then said to Plitsas, "This one's for you," and played the clip again. (Id.) Plitsas alerted Hopkins of the email, screen saver, and audio clip incidents, which Hopkins said that he would address. (Id. ¶ 13.)

Following the audio clip incident, Plitsas began to find photocopies of hands in his workplace mailbox. (Id. ¶¶ 15-16.) He also received a photocopy of a coworker making a middle-finger gesture and an x-ray of another coworker's hand. (Id. ¶ 16.) Plitsas believed the

hand photocopies and x-ray were related to his fingernail biting or his coffee drinking, and complained to Hopkins about the activity.  (Id. ¶¶ 17-18.)  After Hopkins left Federal Express, Plitsas renewed his concerns with Krawczyk.  (Id. ¶ 17.)  The hand photocopies continued to appear in Plitsas's mailbox daily for the remainder of his employment at Federal Express.  (Id. ¶ 19.)

The hand photocopies were followed by an advertisement for Zoloft appearing in Plitsas's work mailbox, in his email, and on several common area computers at Federal Express.  (Id. ¶ 20.)  Plitsas also had remarks written on his pay envelopes such as "six left," "five left," and "bye bye."  (Id. ¶ 21.)  On another occasion, Plitsas found a Port Authority summons in his work mailbox, and someone placed a cylinder head he was working on down on the floor creating an oil leak noticed by Hopkins.  (Id. ¶¶ 22-23.)  Plitsas told Hopkins of the Zoloft ads, noticed Savare writing one of the notes on his pay envelope, and told Krawczyk of the Port Authority summons.  (Id. ¶¶ 22-23; Pl. R. 56.1 Opp. Statement ¶¶ 20-21.)

During Plitsas's employment with Federal Express, employees were terminated if they were absent for two consecutive days without notifying management or providing a legitimate reason to management.  (Def. R. 56.1 Statement ¶ 28.)  In 2005, Federal Express policy was to terminate any employee who provided false work-related information to the company.  (Id. ¶ 30.)

On Wednesday, October 19, 2005, Plitsas was sent home from work by Krawczyk for appearing to be sick, as he was dizzy and had difficulty walking.  (Pl. R. 56.1 Statement ¶ 34.)  Plitsas was hospitalized in New Jersey from October 19 through Saturday, October 22, and then hospitalized in Pennsylvania from Monday, October 24 through Tuesday, October 25.  (Id.)  On October 25, 2005, Krawczyk contacted his superior at Federal Express, Mathis, to discuss

Plitsas's failure to show up for work or to contact Federal Express since October 19. (Def. R. 56.1 Statement ¶ 35.) Mathis called Plitsas on October 25 to request an explanation of his unexcused absences; Plitsas informed Mathis of his sickness, said he would provide documentation, and further informed Mathis that he would not be returning to work on October 26. (Id. ¶ 36.) Federal Express suspended Plitsas and began an investigation of his absence. (Id. ¶ 37.)

Plitsas left the hospital on October 25, 2005, without a diagnosis, but with a recommendation to see a specialist. (Id. ¶ 39.) When Plitsas saw his primary care physician, Dr. Moclock, that same day, he was told that he had migraine headaches and needed to see a specialist. (Id. ¶ 40.) On October 26, Plitsas sought treatment at Allen Neurosurgery, but was told that he would not be able to get an appointment until December 1. (Id. ¶ 41.) On October 28, Plitsas returned to Dr. Moclock, and Dr. Moclock wrote a letter stating that Plitsas would be under his care and would not return to work until November 2. (Id. ¶ 42.) The letter was faxed to Mathis at Federal Express. (Pl. R. 56.1 Opp. Statement ¶ 42.) When Plitsas returned to Federal Express on November 2, he was informed of his suspension and sent home. (Def. R. 56.1 Statement ¶ 44.)

On November 4, 2005, Mathis (and other Federal Express employees) called Plitsas in order to obtain an explanation for Plitsas's absence from work. (Id. ¶ 46-47.) During the course of the conversation, they discussed Plitsas's contact with Allen Neurosurgery, but the parties disagree about the name of the Allen Neurosurgery physician to whom Plitsas spoke—Plitsas claimed he said "Dr. Chuvanni," whereas the Federal Express employees heard "Dr. Giovanni." (Pl. R. 56.1 Opp. Statement ¶ 47.) Mathis requested a timeline of Plitsas's medical treatment,

which Plitsas submitted.  (Id.)

When Mathis investigated Plitsas's version of events, he was told that Allen Neurosurgery did not employ a "Dr. Giovanni."  (Def. R. 56.1 Statement ¶ 49.)  Mathis also found that no medical documentation existed for Plitsas's absences on October 26 and 27.  (Id. ¶ 50.)  Mathis then directed Hopkins to terminate Plitsas, which was handled on November 11 when Plitsas returned to work.  (Id. ¶¶ 51, 53.)

Plitsas filed the instant suit in this Court on November 13, 2007.  The Complaint consists of three counts: one count for violation of the Family and Medical Leave Act ("FMLA"), one count for a hostile work environment related to Plitsas's Greek heritage under the New Jersey Law Against Discrimination ("NJLAD"), and one count for a hostile work environment related to Federal Express's perception of Plitsas's sexual orientation under the NJLAD.

## DISCUSSION

Defendant moves for summary judgment on several grounds.  First, Federal Express argues that Plitsas is barred by the statute of limitations or by contract.  Second, Federal Express claims that Plitsas fails to either set forth prima facie cases or establish pretext on the merits of his claims.

**I.     Legal Standard**

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue

of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial.  Id. at 324.   In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).   Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings.  See Celotex, 477 U.S. at 324.  Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment.  See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).  The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party.  See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

**II.     Discussion**

       **A.     Statute of Limitations**

Federal Express makes several arguments concerning the timeliness of Plitsas's claims.  First, it argues that Plitsas contracted with Federal Express to bring any claims within six months of the claims' accrual.  Second, it argues that if this Court does not find that Plitsas's claims are contractually barred, Plitsas's hostile work environment claims are barred by the statute of limitations.[2]   This Court will address the statutory issue first, as it would be unnecessary to decide whether Plitsas's NJLAD claims are untimely under the employment agreement if they are also untimely under the longer statutory limitations period.

---

[2] Federal Express concedes that if this Court does not find its contractual limitations period applicable, Plitsas's FMLA claim is timely.  (Def. Reply Br. at 9.)

1.      **Statute of Limitations Under the NJLAD**

Federal Express argues that Plitsas failed to comply with the statute of limitations for the NJLAD by filing his claim on November 13, 2007. According to Federal Express, the last date on which Plitsas could have been subjected to a hostile work environment was October 19, 2005, when Krawczyk sent Plitsas home sick. (Def. Reply Br. at 10.) Plitsas argues that that Federal Express waived this defense by failing to act upon it during the pendency of this matter. (Pl. Opp. Br. at 7-8.)

First, Federal Express has not waived this defense. Plitsas admits that it was raised in Federal Express's answer and asserted at summary judgment. (Pl. Opp. Br. at 7.) The case cited by Plaintiff for the proposition that the defense has been waived, Williams v. Bell Telephone Laboratories, Inc., discusses waiver of a statute of limitations defense raised in an answer and then left to lie until a post-trial brief. 623 A.2d 234, 237, 238-39 (N.J. 1993). The instant case is distinguishable from Williams, as Federal Express is raising its statute of limitations defense at summary judgment, prior to trial, and this Court thus declines to find that Federal Express waived its statute of limitations defense.

The NJLAD's statute of limitation is two years. Roa v. Roa, 985 A.2d 1225, 1231 (N.J. 2010). New Jersey recognizes that NJLAD claims can be brought as continuing violations or as discrete acts of discrimination. Roa, 985 A.2d at 1231-32. Discrete acts, such as termination or failure to promote, cannot be aggregated and claims on such acts must be brought within the applicable limitations period. O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006). Continuing violations are acts which are not individually actionable, but may be aggregated "so

long as they are linked in a pattern of actions which continues into the applicable limitations period." O'Connor, 440 F.3d at 127.

Here, Plitsas's NJLAD claims are for a pattern of actions that end on October 19, 2005. Assuming arguendo that the campaign of slights and abuse by Savare constituted a hostile work environment based on either Plitsas's Greek extraction or Plitsas's perceived sexual orientation, there are no facts in the record that extend the hostile work environment claims past October 19, 2005. Although Plitsas did raise the workplace abuse and intimidation to his supervisors Hopkins and Krawczyk, there is no evidence available with which to infer that the decision to terminate Plitsas was related to his Greek ancestry or Savare's opinion of Plitsas's sexual orientation. The evidence is undisputed that Mathis made the decision to terminate Plitsas based upon the outcome of his investigation into Plitsas's post-October 19 absence from work. In the absence of a "pattern of actions . . . continu[ing] into the applicable limitations period," which would have required Plitsas's presence in a hostile work environment in the second week of November, 2005, this Court concludes that Plitsas's NJLAD claims are untimely. O'Connor, 440 F.3d at 127. Summary judgment, therefore, is granted to Defendant on Plaintiff's NJLAD claims.

### 2.  Contractual Limitations Period

When Plitsas was hired by Federal Express, he signed an agreement stating that he would bring suit for any claim against Federal Express "within the time prescribed by law or 6 months from the date of the event forming the basis of my lawsuit, whichever expires first." (Def. R. 56.1 Statement ¶ 2.)  Defendants argue that contractual claims limitation periods are recognized

under both federal and New Jersey law, and that summary judgment should be granted on the basis that Plaintiff was approximately eighteen months late in filing suit. (Def. Br. at 6-12.) Plitsas argues that the employment agreement was an unenforceable contract of adhesion and that the six-month contractual claims limitation has already been rejected in the FMLA context by a court in this circuit. (Pl. Opp. Br. at 4-8.)

The default statute of limitations under the FMLA is two years. 29 U.S.C. § 2617(c)(1). Federal courts have generally recognized, however, that parties may contractually limit the time in which claims may be filed. "[I]t is well established that, in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period." Order of United Comm. Travelers of America v. Wolfe, 331 U.S. 586, 608 (1947). Courts in this District have also enforced contractual limits on the filing of claims. Pyo v. Wicked Fashions, Inc., No. 09-2422, 2010 WL 1380982, at *9-10 (D.N.J. Mar. 31, 2010) (approving one-year limitation on bringing New Jersey and federal employment discrimination claims); Aull v. McKeon-Grano Assocs., Inc., No. 06-2752, 2007 WL 655484, at *7-8 (D.N.J. Feb. 26, 2007) (finding six-month limitation reasonable in USERRA context).

Defendant points out a split in authority among the district courts as to whether or not parties can contractually reduce the FMLA statute of limitations. (Def. Br. at 10-12.) Some courts have found that regulations promulgated under the FMLA prevent parties from contracting for shorter claim filing periods. Henegar v. Daimler-Chrysler Corp., 280 F. Supp 2d 680, 681 n.2 (E.D. Mich. 2003); Lewis v. Harper Hosp., 241 F. Supp 2d 769, 772-73 (E.D. Mich. 2002).

Other have held that statutes of limitations do not provide "rights" to claimants, and may be shortened by contract subject to reasonability.  See, e.g., Badgett v. Federal Express Corp., 378 F. Supp 2d 613, 624-25 (M.D.N.C. 2005).  Plaintiff notes, however, that a reported case on the issue exists in this circuit: Grosso v. Federal Express Corp., 467 F. Supp 2d 449, 456-57 (E.D. Pa. 2006).

In Grosso, the Court faced a very similar limitations clause to that signed by Plitsas, providing that lawsuits must be brought within six months of accrual.  467 F. Supp 2d at 456.  The court held that under the existing split in authority as to whether the FMLA statute of limitations could be contractually reduced, the better reasoning was supplied by the cases holding that such agreements did not apply to FMLA claims.  Id. at 456.  The court then went on to hold, alternatively, that a six-month limitation was unreasonable under Pennsylvania law.  Id. at 456-57.  The rule of Grosso has since been limited to the claims at issue in the case, FMLA and ERISA claims, but not abandoned.  PSC Info Group v. Lason, Inc., — F. Supp 2d —, at *8 (E.D. Pa. 2010).

This Court finds Lewis and Grosso persuasive.  Although there is no statutory bar within the FMLA on diminishing its limitations period by contract, the regulations promulgated under the statute prevent employers "from interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights provided by the Act." 29 C.F.R. § 825.220 (2009).  Although Badgett is correct that statutes of limitations exist to protect defendants by encouraging plaintiffs to bring claims before they are stale, the regulation quoted supra restrains employers from interfering with relief under the FMLA.  29 C.F.R. § 825.220 (2009); Wolfe, 331 U.S. at 608 n.20; Badgett 378 F. Supp 2d at 624-25.  While the regulatory limitation may not be the statute

envisioned in Wolfe, it presents a legal backstop to efforts by employers to restrict access by employees to their rights under the FMLA.  331 U.S. at 608.  A limitation on the time in which a plaintiff may recover is a restraint upon access to rights under the FMLA; even though the statute of limitations in the FMLA inures to the benefit of defendants, the regulation exists to protect employees.  This Court, therefore, finds that the contractual limitation upon time for recovery in Plitsas's agreement with Federal Express does not apply to his FMLA claim, and summary judgment is denied to Federal Express on that basis.

      **B.**     **FMLA Claim**

Federal Express argues that Plitsas cannot make out a prima facie claim under the FMLA or show the necessary pretext. (Def. Br. at 26-33.)  Plaintiff maintains that the facts before the Court demonstrate that Plitsas's FMLA case should proceed beyond summary judgment.  (Pl. Opp. Br. at 26-33.)  As this Court finds that Plitsas's opposition brief characterizes his claim under the FMLA as one for retaliation, this Court shall construe his FMLA claim as such.  (Id. at 26.)

The FMLA prohibits retaliation against individuals who take FMLA leave or engage in activity protected by the FMLA.  Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 146-47 n.9 (3d Cir. 2004); Petras, No. 07-170, 2008 WL 5395750, at * 12.  In order to make out a prima facie FMLA retaliation claim, a plaintiff must satisfy three elements: (1) he asserted FMLA rights, "(2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his leave."  Erdman v. Nationwide Ins. Co., 582 F.3d 500, 508-09 (3d Cir. 2009); Conoshenti, 364 F.3d at 146.  The burden of articulating a legitimate, non-discriminatory

rationale then shifts to the employer, after which the employee must meet his burden in demonstrating pretext. Bearley v. Friendly Ice Cream Corp., 322 F. Supp 2d 563, 572-73 (M.D. Pa. 2004).

### 1.    Plitsas's Prima Facie Case Under the FMLA

Neither party disputes that Plitsas was terminated, and thus suffered an adverse employment decision satisfying the second prong of the test for a prima facie case. This Court, therefore, must determine whether the evidence before it demonstrates that, when examined in the light most favorable to Plitsas, he asserted his rights under the FMLA and that his termination was causally related to his leave.

Federal Express argues that Plitsas never engaged in activity protected by the FMLA because he was not out on FMLA leave. (Def. Br. at 27.) This argument is foreclosed by the reasoning of the Third Circuit Court of Appeals in Erdman v. Nationwide Ins. Co., 582 F.3d at 508-09. In Erdman, the Third Circuit confronted an argument that an employee had to have taken FMLA leave in order to avail himself of the statute's protections against retaliation. Id. This argument was rejected: the Erdman court held, instead, that an employee had only to assert FMLA rights, and that it was unnecessary for FMLA leave to have begun in order for an employee to receive protection under the statute. Id. at 509.

Here, the evidence in the record demonstrates that Mathis spoke to Plitsas on October 25, 2005, and that Mathis followed up the phone call with a memorandum on Federal Express letterhead entitled "FMLA," with instructions to provide the necessary paperwork for medical leave within fifteen days. (Klausner Cert. Ex. G.) Although the memorandum gave Plitsas

-12-

fifteen days to provide the documentation for medical leave under the FMLA, Mathis required an update on Plitsas's "status" by the next day, October 26, 2005. (Id.) Plitsas asserts that he faxed documents to Federal Express on October 25, but points only to the Mathis memorandum of October 25 as evidence for his faxes. (Pl. R. 56.1 Statement ¶ 35.) Plitsas's deposition transcript, however, interpreted in the light most favorable to Plitsas, states that: 1) Plitsas saw Dr. Moclock on October 25, 2005; 2) Dr. Moclock told him not to go to work on October 26; 3) a specialist would have to make the call about Plitsas returning to work; and 4) Plitsas faxed documents to Federal Express on October 25, 2005. (Plitsas Dep. Tr. 232:19-237:2.) The record discloses that both Federal Express and Plitsas had recognized that the FMLA might apply to his situation on October 25 and that Plitsas did fax some information to Federal Express on October 25. This Court concludes, therefore, that Plitsas satisfies the first element of an FMLA retaliation claim, that he asserted rights under the FMLA. Erdman v. Nationwide Ins. Co., 582 F.3d at 508-09.

With respect to the third element of an FMLA retaliation claim, the causal connection between Plitsas's seeking FMLA leave and his termination, Federal Express argues that because Plitsas was fired for supplying false information about his contacts with Allen Neurosurgery, there is no causal connection between Plitsas's attempt to receive FMLA leave from Federal Express and Plitsas's termination. (Def. Br. at 29.) Plitsas maintains that he can demonstrate causation by temporal proximity and because Plitsas did not supply false information to Mathis. (Pl. Opp. Br. at 31, 32-33.)

The evidence in the record shows that Mathis came away from the November 4 telephone call with Plitsas believing that Plitsas had been seen at Allen Neurosurgery by a Dr. Giovanni on

October 26 and 28.  (Mathis Dec. ¶ 12.)  Mathis then called Allen Neurosurgery and discovered that it did not employ a Dr. Giovanni and that Plitsas had not been seen on October 26 and 28.  (Id. ¶ 14.)  After receiving medical records from Plitsas, Mathis did not find any justification for Plitsas's absences on October 26 and 27, and decided to terminate Plitsas under Federal Express's no-fault absence policy.  (Id. ¶¶ 16-17.)

Plitsas's deposition, however, examined in the light most favorable to him, indicates that he believed that both Dr. Mocock and the nurse he spoke to at Allen Neurosurgery advised him to not go to work until he had been seen at Allen Neurosurgery.  (Plitsas Dep. Tr. 232:19-237:2.)  Furthermore, with respect to the November 4 phone call, Plitsas stated that Federal Express was already accusing him of falsifying medical records in that phone call, and that there was a misunderstanding over the name of the physician[3] he was scheduled to see at Allen Neurosurgery.  (Plitsas Dep. Tr. 259:9-13, 260:19-25.)  Finally, Plitsas's deposition states that he did not say that he had seen a doctor at Allen Neurosurgery on October 26 or 28.  (Id. at 261:1-12.)

The facts relied upon by Mathis to determine that Plitsas lied in his submissions to Federal Express, therefore, are disputed: Plitsas denies telling Mathis that he was seen at Allen Neurosurgery on October 26 or 28, and Plitsas also states that he was told not to go to work by Dr. Mocock and a nurse at Allen Neurosurgery.  A finder of fact could conclude that Defendant's version of events, in which there is no causal relationship between Plitsas's FMLA rights and his

---

[3]This misunderstanding extends to the briefing at summary judgment, where different spellings are used in Plaintiff's statement of material facts, the opposition brief, and Plaintiff's deposition.

termination, is factually untenable.

Temporal proximity alone between a protected act and an adverse employment action can suffice to demonstrate causation if it is "unusually suggestive." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279-80 (3d Cir. 2000). Two days has been held to be "unusually suggestive," whereas nineteen months is not sufficiently suggestive. Farrell, 206 F.3d at 279. Here, Federal Express contemplated FMLA leave for Plitsas on October 25, 2005, and made the decision to terminate prior to November 11, 2005. This is a total gap of fifteen days at most. This Court finds that while fifteen days is not as unusually suggestive as two days, the short time span involved, in addition to the fact that Plitsas's deposition transcript differs so substantially from Mathis's affidavit with regard to the November 4 phone call, shows that causation can be demonstrated here. Id. at 280-81 ("For example, a plaintiff may establish the connection by showing that the employer gave inconsistent reasons for terminating the employee."). This Court, therefore, finds that Plitsas has successfully produced enough evidence to survive summary judgment on the issue of whether he has set forth a prima facie case of FMLA retaliation.

### 2. Pretext

After a plaintiff sets forth a prima facie case for FMLA retaliation, the familiar burden-shifting scheme places the burden of production on defendant to set forth a legitimate, nondiscriminatory reason for taking the employment action at issue. O'Hare v. McLean Packaging and Trucking, No. 08-2083, 2009 WL 3207277, at *7 (D.N.J. Sept. 29, 2009). In this case, Federal Express has met its burden by stating that it terminated Plitsas for providing false

information concerning his medical treatment after October 19, 2005. The burden then shifts back to plaintiff to demonstrate sufficient evidence of pretext to meet his burden at summary judgment. Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). "[T]o defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764.

This Court finds that Plitsas has set forth sufficient facts to challenge Federal Express's legitimate nondiscriminatory reason for firing him to demonstrate pretext. As detailed supra in this Court's discussion of the causal relationship between the termination and Plitsas's seeking of FMLA leave, Plitsas's deposition contradicts many of the statements in Mathis's affidavit concerning the November 4 phone call. Compare, e.g., Mathis Dec. ¶¶ 11, 14 (stating that investigation occurred after November 4 phone call) with Plitsas Tr. 259:9-13 (indicating that accusations of falsifying medical records occurred during November 4 phone call). Such evidence is sufficient for a factfinder to call into question the Federal Express's proferred legitimate reason for dismissing Plitsas, and, therefore, summary judgment is denied to Defendant on Plitsas's FMLA claim.

**CONCLUSION**

For the reasons set forth above, this Court finds that Defendant's motion for summary judgment is denied in part and granted in part.  An appropriate order accompanies this Opinion.


DATED: April 22, 2009				 /s/ Jose L. Linares
						United States District Judge